The Honorable Gene Jeffress State Senator 1483 Ouachita 47 Louann, AR 71751
Dear Senator Jeffress:
I am writing in response to your request for an opinion on the following questions:
 1. May state-organized educational cooperatives operate state-funded preschools?
 2. Under what circumstances would a DDS school be allowed to extend its focus or its original boundaries?
RESPONSE
It is my opinion that the answer to your first question is, generally, "yes." With regard to your second question, assuming you are referring to a nonprofit entity that is licensed by the Arkansas Division of Developmental Disabilities Service (DDS)[1] to provide services to individuals who have a developmental disability, it is my opinion that the extension or expansion of services by such a provider is currently governed generally by Act 16 of the First Extraordinary Session of 2003.
DISCUSSION:
Question 1 — May state-organized educational cooperatives operatestate-funded preschools?
This question presumably has reference to the Arkansas Better Chance Program Act, as amended (A.C.A. § 6-45-101 et seq. (Repl. 1999 and Supp. 2003 and Acts 2003, 2nd Ex. Sess., No. 49)), hereinafter "ABC Program." The purpose of this legislation is to assist in the establishment and funding of appropriate early childhood programs for children ages birth through five years. See A.C.A. § 6-45-105 (Supp. 2003). State grants and contracts are awarded to programs that are accredited and approved by the Department of Human Services (DHS) according to Department of Education standards. A.C.A. §§ 6-45-105 (a) (2) and -106 (a) (1) (A) (as amended by Acts 2003, 2nd Ex. Sess., No. 49). Any "accredited and quality approved" early childhood program may apply for funding, "regardless of the sponsorship of the program." Id. at 106 (a) (1) (A). Although they are not required to participate (see § 6-45-104 (a) (1)), local school districts may apply for funding under the act. A.C.A. § 6-45-106 (a) (1) (A). There is a local-to-state matching requirement (40:60 ratio) that can be waived by the Division of Child Care and Early Childhood Education within DHS. Id. at (a) (2) (A) (authorizing waiver if the school is in a district in "academic distress" and it is determined that the school cannot provide the match).
Included within the ABC Program is the Arkansas Better Chance for School Success Program for three and four-year-olds in a family with a gross income not exceeding 200% of the federal poverty level. See A.C.A. §§6-45-105 (a) (1) (B) (Supp. 2003) and -108 (amended by Acts 2003, 2nd
Ex. Sess., No. 49). In allocating funds under this program, priority is given to schools that have 75% or more students scoring below proficiency on designated exams, and that have been identified as being in "school improvement status" or in a district in academic distress. A.C.A. §6-45-106 (c) (1) (as amended by Acts 2003, 2nd Ex. Sess., No. 49). The state's expressed goal in this regard is "to make available an Arkansas Better Chance for School Success Program for an additional one-fifth (1/5) of the qualifying students each year over a period of five (5) years at which time programs shall be available in all schools statewide." Id. at (c) (2). Additionally, there is a requirement that certain local schools be involved in the development of the Arkansas Better Chance for School Success Program. Section 6-45-104 states in relevant part, as amended:
 (a) (2) A local school is required to work with the Department of Education and its local community to establish, promote, and assist in the development of a program under the Arkansas Better Chance for School Success Program to serve all children in the school as provided in § 6-45-108, if:
 (A) The school has seventy-five percent (75%) or more students scoring below proficiency on the primary benchmark exams or other exams designated by the department in the preceding two (2) school years; or
 (B) The school has been designated by the department as being in school improvement status under § 6-15-425 or is located in a district in academic distress.
A.C.A. § 6-45-104 (as amended by Acts 2003, 2nd Ex. Sess. No. 49).
I believe it is clear from this brief summary that the service needs of schools may include the early childhood programs funded under the ABC Program, including the Arkansas Better Chance for School Success Program. This is significant for purposes of your question because of the established role of "education service cooperatives" in assisting member school districts in their efforts to maximize educational resources and opportunities. See generally A.C.A. 6-13-1002 (Repl. 1999). The cooperatives are authorized and governed generally by the Education Service Cooperative Act (A.C.A. §§ 6-13-1001 to -1026 (Repl. 1999 and Supp. 2003)). They are "intermediate service units in the state's elementary and secondary education system" and "local education agencies;" and as such they are eligible to receive state, local, and federal funds. A.C.A. §§ 6-13-1002(a) (Repl. 1999) and -1026 (Supp. 2003). The statute addressing their programs and services provides in relevant part:
 (a) The programs and services of each education service cooperative shall be based upon the needs of the school districts included in its service area and upon the educational priorities of the state.
* * *
 (c) Education service cooperatives may provide shared educational programs and services such as needs assessment and school improvement planning, staff development, curriculum development, itinerant teachers, instructional materials, adult and vocational education, programs for gifted and talented, education for children with disabilities, alternative educational programs, secondary area vocational centers, community-based education programs and other services which the State Board of Education may approve or which school districts may support with local funds.
A.C.A. § 6-13-1017 (Repl. 1999).
Although the Education Service Cooperative Act does not specifically include the ABC Program within the "shared educational programs and services" that may be provided by education cooperatives, it is my opinion as a general matter that the act is sufficiently broad to encompass these early childhood programs.
Question 2 — Under what circumstances would a DDS school be allowed toextend its focus or its original boundaries?
It is my opinion that this matter is currently governed, generally, by Act 16 of the First Extraordinary Session of 2003, the appropriation act for the Division of Developmental Disabilities Service. (See n. 1,supra, regarding DDS). Section 12 of Act 16 provides in relevant part as follows:
 Funds allocated under the appropriation for community-based services, for Grants to Community Providers, in the Developmental Disabilities Services — Grants-in-Aid appropriation in this act shall be used only to provide services through private community based services licensed or certified by the Arkansas Division of Developmental Disabilities Services (DDS). Non-profit community-based programs licensed by the Division of Developmental Disabilities Services are quasi-governmental instrumentalities of the state which provide supports and services to individuals who have a developmental disability or delay, who would otherwise require supports and services through state-operated programs and facilities owned by the State of Arkansas. When DDS licensed providers are involved in delivering services which are Medicaid reimbursable, they must enroll as a provider with the Arkansas Medicaid Program and must bill the Arkansas Medicaid Program for all covered services for eligible individuals.
 Services which are covered by the Arkansas State Medicaid Program or under the Alternative Community Services Waiver Program (ACS) will be utilized to the maximum extent possible for any individual who is eligible for Medicaid coverage. It is the intent of this section that DDS, as a general policy, maximize the use of Medicaid funding available for appropriate services.
 In the event that components of community-based services now funded from state and/or federal funds are extended to unserved or underserved areas of the state, or in the event that new services categories/codes are made available, to be funded from state and/or federal funds all non-profit community programs licensed by the Division of Developmental Disabilities Services shall be granted an opportunity to make application to expand their service base to unserved or underserved areas or shall be granted an opportunity to make application to offer new services that the State intends to offer. When the Division of Developmental Disabilities services determines that state and/or federal funding for new or expanded services are to be available, it shall develop a Request for Proposal (RFP) process which includes a provision to provide notice of its intent to existing providers and to the general public. Nothing in this Act shall restrict the Division's discretion to award new or expanded services to the existing community based service providers making application for the same pursuant to this section. The intent of this section is to avoid unnecessary duplication of administrative costs and services in the extension or expansion of services.
 The provisions of this section shall be in effect only from July 1, 2003 through June 30, 2005.
Acts 2003, 1st Ex. Sess. No. 16 (emphasis added).
In my opinion, this provision answers your general question with regard to extending the focus or boundaries of a licensed developmental disabilities services provider.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] DDS is the division within the Department of Human Services responsible for the administration of service available to individuals with developmental disabilities. See A.C.A. §§ 25-10-102(4) and -104(d)(2). Public and private facilities are subject to licensing requirements and Board of Developmental Disabilities Services regulations as a condition of providing mental retardation services. A.C.A. §20-48-208.